```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION


JENNIFER L. CROWDER,                 )
                                     )
              Plaintiff,             )
                                     )
       v.                            )   No. 4:08CV1603 FRB
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
              Defendant.             )
```

**MEMORANDUM AND ORDER**

This cause is before the Court on plaintiff's appeal of an adverse ruling of the Social Security Administration. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

### I. Procedural History

On March 2, 2006, plaintiff Jennifer L. Crowder filed an application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq., with a protective filing date of February 27, 2006. In her application, plaintiff alleged that she became disabled on February 1, 2003. (Tr. 74-79.)[1] On initial consideration, the Social

---

[1]The record also contains an application for Disability Insurance Benefits pursuant to Title II, 42 U.S.C. §§ 401, et seq. (Tr. 80-84.) A review of the record shows no determination to have been made on this application. In her Complaint, plaintiff seeks judicial review only with respect to the Commissioner's adverse decision regarding her SSI application. Accordingly, the only matter before this Court is that relating to the Commissioner's adverse decision on plaintiff's application for SSI benefits.

Security Administration denied plaintiff's claim for benefits. (Tr. 36, 42-46.) On August 27, 2007, upon plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ). (Tr. 20-30.) Plaintiff testified and was represented by counsel. On September 19, 2007, the ALJ issued a decision denying plaintiff's claim for benefits. (Tr. 7-16.) On August 21, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

At the hearing on August 27, 2007, plaintiff testified in response to questions posed by the ALJ and counsel. At the time of the hearing, plaintiff was twenty-six years of age. Plaintiff completed the twelfth grade in high school. Plaintiff participated in special education since the second grade in the areas of reading, spelling and math. Plaintiff testified that she is able to read and understand a newspaper. (Tr. 24-25.) Plaintiff is right-handed. (Tr. 29.)

Plaintiff testified that she previously worked at Casey's preparing pizzas, but was fired after approximately two months because she could not keep up. Plaintiff testified that she also worked at McDonald's for a few weeks but was fired because she did not have a babysitter for her daughter. (Tr. 25-26.) Plaintiff testified that she worked at a factory for Rawlings, a sporting goods company, assembling helmets. Plaintiff testified that she

was fired from that job after one month because she worked too slowly. (Tr. 26-27.) Plaintiff testified that she also worked for about one month in 2000 putting soles on shoes, but was fired because she was not working fast enough. Finally, plaintiff testified that she worked for Bell Counter Company as a shoe counter for approximately five months in 2002 and 2003, but that she left that job when the company closed. (Tr. 27-28.)

Plaintiff testified that in 2005, she experienced pain in her right wrist and numbness in her right fingertips and was told that she had carpal tunnel syndrome. Plaintiff testified that she continues to experience the condition. Plaintiff testified that the condition causes her to experience problems with writing letters, peeling potatoes and apples, and cutting meat. Plaintiff testified that she has no difficulty using her left hand. (Tr. 28-29.)

Plaintiff testified that she spends her day taking care of her daughter and trying to clean the house. Plaintiff testified that she has problems keeping her checking account balanced. (Tr. 29.)

### III. Medical and Educational Records

On February 11, 1998, plaintiff underwent diagnostic testing at the Maries County R-II School, the results of which showed plaintiff to meet the eligibility criteria for mild mental retardation. (Tr. 146-49.) Plaintiff was a junior in high school at the time of the testing. It was noted that plaintiff was placed

in the special education program in the first grade, and was currently in the regular education modified program. It was noted that plaintiff was generally agreeable, did her work during class without being told, and sometimes asked for assistance. It was noted that plaintiff experienced difficulty coping with casual remarks and teasing by her peers. (Tr. 147.) Plaintiff's WISC-III scores from February 1995 were noted to be as follows: verbal - 66, performance - 69, and full scale - 65. It was noted, however, that plaintiff performed at a much higher level than the scores indicated. It was also noted that plaintiff's scores on the Adaptive Behavioral Evaluation Scale, indicating how well plaintiff adapted to her educational setting, were in the average range. Plaintiff's current grades were noted to mostly consist of B's and C's, with an F in algebra and an A in choir. Testing conducted in May 1997 showed plaintiff's grade levels to be as follows in the respective areas: Spelling - 6.8, Reading Recognition - 9.7, and Reading Comprehension - 5.8. (Tr. 148.) Plaintiff graduated from Maries County R-II in May 1999. (Tr. 171.)

On March 16, 2000, plaintiff visited Jane Moore (RN, CS-FNP) at the Belle Family Health Center ("Health Center") complaining of abdominal pain. Nurse Moore diagnosed plaintiff with probable gastroenteritis and instructed plaintiff as to diet and to take Pepto-Bismol or Mylanta if needed. (Tr. 225-27.)

On April 17, 2000, plaintiff underwent psychological evaluation for disability determinations. (Tr. 184-87.) Plaintiff

was nineteen years of age. Plaintiff reported having graduated from high school, but described herself as a below average student who was in special education classes. Plaintiff reported that she had previously worked at two separate jobs, from which she was fired after a few weeks. Plaintiff reported her daily activities to include housework, watching television, listening to music on the radio, and being with friends. (Tr. 184.) Plaintiff was administered the WAIS-III test which resulted in the following scores: verbal - 78, performance - 78, and full scale - 76. (Tr. 184-85.) Mental status evaluation was unremarkable. (Tr. 185, 186.) Clinical Psychologist Brian P. Cysewski summarized the evaluation as follows:

> At the present time, she can understand simple instructions, her social awareness however, is relatively poor[.] . . . It may be required to provided [sic] an increased amount of time in training and support in order for Jennifer to acquire the skills of even basic and entry level competitive employment. . . . [H]er concentration is good and she was able to persist through the evaluation which took over an hour. She behaved in an appropriate manner socially though she will need support adapting to changes in her environment. This support will be commensurate with her level of intellectual functioning.

(Tr. 185.)

Dr. Cysewski concluded his evaluation with a diagnosis of borderline intellectual functioning and a Global Assessment of

Functioning (GAF) score of 60. (Tr. 185.)[2]

Plaintiff visited Nurse Moore at the Health Center on May 16, 2001, complaining of abdominal and flank pain with vomiting. Plaintiff was instructed to go to the emergency room. (Tr. 224.)

On December 17, 2002, plaintiff visited Nurse Moore and complained of symptoms associated with sinusitis and bronchitis. Plaintiff was prescribed medication for the conditions and was instructed to follow up if there was no improvement. (Tr. 223, 228.)

In February and March 2004, plaintiff participated in vocational rehabilitation services at Lakes Country Resource Center. (Tr. 189-92, 196-98.) Counselor Robyn Smith noted plaintiff to have a cognitive impairment due to mental retardation, and that such impairment constituted a substantial impediment to employment due to employers' reluctance to employ and because the disability interfered with preparation for an occupation commensurate with capacities and abilities. (Tr. 189.) Counselor Smith determined plaintiff to have a "Most Significant Disability" in that she was seriously limited in the areas of self-care, communication and work skills. (Tr. 190-91.) Counselor Smith

---

[2]A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness." Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000). A GAF score of 51 to 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers).

opined that plaintiff

> will require assistance with personal hygiene, specifically oral hygiene and grooming. She will require accommodations for all reading and math functions in both an academic or work setting. Having had Jennifer as a previous client, I have observed her in both training and vocational environments, I have witnessed her inability to learn new tasks quickly. She will require assistance in learning the job requirements for any position in which she might become employed. She also has a tendency to thwart direction from others and does not accept her limitations.

(Tr. 192.)

Plaintiff's case manager, Amy Lewis, noted that plaintiff failed to appear for scheduled appointments and assessments due to difficulties with housing and babysitting assistance. (Tr. 196-98.)

Plaintiff returned to the Health Center on March 18, 2004, and complained of symptoms associated with upper respiratory infection. (Tr. 222.) Plaintiff returned on March 24, 2004, indicating no improvement in her condition. Dr. E. Hosmer prescribed a Z-pack for plaintiff. (Tr. 221.)

Plaintiff visited Nurse Moore at the Health Center on May 24, 2004, with complaints relating to a stubbed toe. (Tr. 220.) On June 9, 2004, Dr. Hosmer diagnosed plaintiff with a fractured toe and also with bronchitis. (Tr. 219.) Plaintiff returned to the Health Center on July 21, 2004, in relation to a wasp sting on her lower lip. (Tr. 218.)

Plaintiff visited Dr. Hosmer at the Health Center on July 28, 2004, and complained of heartburn and epigastric discomfort. Plaintiff was instructed to take Zantac for the condition. (Tr. 217.)

Plaintiff returned to the Health Center on October 1, 2004, with complaints associated with allergic rhinitis. Plaintiff was instructed to take Claritin and to use Nasalnex. (Tr. 216.)

On January 20, 2005, plaintiff visited the Health Center and complained of pain in her right wrist and tingling in her fingertips. Plaintiff reported experiencing these symptoms for two weeks. James Corbett (MSN, RN, FNP) noted some tenderness with carpal compression over the carpal tunnel which reproduced the paresthesia symptoms in the fingers. Phalen's test was positive, but Tinel's exam was negative. Muscle strength was noted to be 5/5 and symmetric with the left hand. Distal capillary refill was intact, as well as distal motor function. Sensation was diminished on the third and fourth fingers when compared to the left side. Nurse Corbett diagnosed plaintiff with carpal tunnel syndrome of the right hand and prescribed Anaprox. Plaintiff was instructed to wear a splint at all times for two weeks, at which time the condition would be reevaluated. (Tr. 245-46.)

On February 3, 2005, Nurse Corbett noted plaintiff's carpal tunnel syndrome to have improved. Plaintiff had full range of motion of the right hand, with no limitations or restrictions. Tinel's test and Phalen's test were negative. Carpal compression

test was likewise negative.  No other significant physical findings were noted.  Plaintiff was advised that she could discontinue Anaprox, but was instructed to continue with the splint for four weeks at which time the condition would be reevaluated.  (Tr. 243-44.)

Plaintiff visited Nurse Moore at the Health Center on March 16, 2005, with complaints of intermittent abdominal pain.  X-rays taken of plaintiff's abdomen were unremarkable.  (Tr. 238-39, 250.)

Plaintiff visited Nurse Moore at the Health Center on June 1, 2005, with complaints related to allergic rhinitis/upper respiratory infection.  Medication was provided.  (Tr. 236-37.)

Plaintiff visited Nurse Moore on June 20, 2005, in relation to gynecological matters.  (Tr. 234-35.)

Plaintiff returned to the Health Center in September and November 2005 with complaints relating to allergic rhinitis. Z-pack, Flonase, and Claritin were prescribed for plaintiff.  (Tr. 232-33.)

On March 31, 2006, Medical Consultant S. Hutson with disability determinations completed a Mental Residual Functional Capacity Assessment in which s/he opined that, in the category of Understanding and Memory, plaintiff was not significantly limited in her ability to remember locations and work-like procedures, or in her ability to understand and remember very short and simple instructions.  Consultant Hutson further opined that plaintiff was

moderately limited in her ability to understand and remember detailed instructions. In the category of Sustained Concentration and Persistence, Consultant Hutson opined that plaintiff was not significantly limited in her ability to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; to work in coordination with or proximity to others without being distracted by them; or in her ability to make simple work-related decisions. Consultant Hutson further opined that plaintiff was moderately limited in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. Consultant Hutson opined that plaintiff was not significantly limited in any area within the category of Social Interaction. In the category of Adaptation, Consultant Hutson opined that plaintiff was not significantly limited in her ability to be aware of normal hazards and take appropriate precautions, or in her ability to travel in unfamiliar places or use public transportation. Consultant Hutson further opined that plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, and in her ability to set realistic goals or make plans independently of others. (Tr. 252-53.)

Consultant Hutson concluded that plaintiff retained the functional capacity to perform simple work. "She is reported to lack confidence and be afraid of things she does not understand. She may need some help to adapt to work but appears to be capable in coping in a low stress work situation." (Tr. 254.)

In a Psychiatric Review Technique Form completed that same date, March 31, 2006, Consultant Hutson determined that plaintiff suffered from borderline intellectual functioning, and opined that such impairment resulted in mild functional limitations in the areas of Activities of Daily Living and Maintaining Social Functioning. Consultant Hutson further opined that plaintiff was moderately limited in the area of Maintaining Concentration, Persistence or Pace. Finally, Consultant Hutson opined that plaintiff experienced no extended episodes of decompensation. (Tr. 256-69.)

Plaintiff visited the Health Center on June 14, 2006, and complained to Nurse Moore of abdominal pain. Plaintiff was treated for constipation and was advised about urinary tract infection. (Tr. 280-82.)

Plaintiff returned to the Health Center on June 23, 2006, and was seen by Nurse Moore for a well woman examination. It was noted that plaintiff's symptoms reported on June 14 had resolved. No other complaints were reported. (Tr. 275-77.)

On August 21, 2007, Donna Haley, a school psychological examiner, conducted an evaluation of plaintiff's cognitive

abilities at the request of plaintiff's counsel.  Ms. Haley reviewed plaintiff's past educational records and conducted the WAIS-R, from which Ms. Haley concluded that plaintiff's verbal abilities and overall cognitive functioning were currently in the borderline range.  Ms. Haley noted, however, that plaintiff's nonverbal abilities were in the mental retardation range.  Plaintiff's IQ scores were measured to be as follows:  verbal - 75, performance - 68, and full scale - 71.  Ms. Haley opined that plaintiff's scores were consistent with those obtained from the WISC-III which was administered to plaintiff in 1995.  (Tr. 284-91.)

### IV.  The ALJ's Decision

The ALJ found plaintiff not to have engaged in substantial gainful activity since February 27, 2006.  The ALJ found plaintiff's borderline intellectual functioning to constitute a severe impairment but that such impairment did not meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4.  The ALJ found plaintiff's allegations of disabling symptoms not to be supported by the evidence.  The ALJ found plaintiff to have the residual functional capacity (RFC) to perform the full range of work at all exertional levels, but to be limited to simple work due to her borderline intellectual functioning.  The ALJ found plaintiff's RFC not to preclude the performance of her past relevant work as a machine operator.  As such, the ALJ determined plaintiff not be under a disability at any

time since February 27, 2006. (Tr. 10-16.)

## V. Discussion

To be eligible for Supplemental Security Income under the Social Security Act, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 416.920 (2007); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or

combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal

quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. Coleman, 498 F.3d at 770; Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the

record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

As her sole claim in the instant appeal, plaintiff contends that the ALJ's decision is not supported by substantial evidence on the record as a whole inasmuch as the ALJ ignored evidence from plaintiff's treating medical source, a nurse practitioner, regarding plaintiff's carpal tunnel syndrome. For the following reasons, plaintiff's claim should be denied.

In his written decision, the ALJ noted that plaintiff alleged that she had carpal tunnel syndrome. The ALJ determined, however, that he could not find such condition to be a medically determinable impairment inasmuch as the existence of the impairment had not been established by a medically acceptable source. (Tr. 13.) The ALJ nevertheless reviewed the medical evidence of record regarding plaintiff's alleged carpal tunnel syndrome and found plaintiff's allegations of its disabling nature not to be credible:

> [T]he evidence also shows that symptoms improved with just two weeks of treatment in early 2005 — over a year before this application was filed. There is no medical evidence documenting that symptoms interfered with her ability to work for 12 continuous months or has bothered her significantly since filing the current application in February 2006.

(Tr. 15.) (Internal citation omitted.)

Evidence from acceptable medical sources is needed to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 416.913(a) (2007); Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (quoting SSR 06-3p). "Acceptable medical sources" include licensed physicians, licensed or certified psychologists, and licensed or certified individuals performing the same functions as school psychologists in school settings. 20 C.F.R. § 416.913(a) (2007). Information from "other sources," such as nurse practitioners and physicians' assistants, may be used to show the severity of an impairment or how the impairment affects a claimant's ability to work. 20 C.F.R. § 416.913(d) (2007); Sloan, 499 F.3d at 888. Information from these "other sources," however, cannot establish the existence of a medically determinable impairment. Sloan, 499 F.3d at 888 (quoting SSR 06-3p).

In the instant cause, the only evidence of diagnosis or treatment of carpal tunnel syndrome came from a nurse practitioner at Belle Family Health Center. A nurse practitioner is not an acceptable medical source. Because no evidence from an acceptable medical source exists in the record as to plaintiff's carpal tunnel syndrome, the ALJ did not err in determining such condition not to constitute a medically determinable impairment.

The ALJ, however, nevertheless considered evidence from the nurse practitioner relating to the severity of plaintiff's carpal tunnel syndrome and found it not to rise to the level of a disabling condition. Specifically, the ALJ found the condition to

- 17 -

have resolved after two weeks of treatment and noted that no evidence in the record showed the condition to interfere with plaintiff's ability to work. Substantial evidence on the record as a whole supports this determination. See Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (impairment which can be controlled by treatment is not considered disabling).

Accordingly, as set out above, the ALJ properly evaluated the evidence contained within the record as a whole, including the medical evidence from plaintiff's nurse practitioner as it related to plaintiff's carpal tunnel syndrome, and properly determined plaintiff's carpal tunnel syndrome not to constitute a medically determinable impairment, nor one which rose to the level of a disabling impairment. Therefore, on the claim raised by plaintiff in the instant cause, the Commissioner's decision denying disability benefits should be affirmed.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff's Complaint is dismissed with prejudice.

Judgment shall be entered accordingly.

*/s/ Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this _10th_ day of February, 2010.